**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**UPHOLSTERERS FRAME & BEDDING WORKERS TWIN CITY LOCAL NO. 61, Respondent.**

No. 17290.

United States Court of Appeals Eighth Circuit.

May 12, 1964.

22. See Note 20, supra.

Melvin J. Welles, Atty., N. L. R. B., Washington, D. C., for petitioner and Arnold Ordman, Gen. Counsel, N. L. R. B., Dominick L. Manoli, Associate Gen. Counsel, N. L. R. B., Marcel Mallet-Prevost, Asst. Gen. Counsel, N. L. R. B., and Gladys Kessler, Atty., N. L. R. B., Washington, D. C., were with him on the brief.

Albert Gore, of Jacobs & Gore, Chicago, Ill., for respondent and filed brief with Joseph M. Jacobs and Martin J. Burns, Chicago, Ill., and Samuel I. Sigal, of Goldie, Sigal & Cohen, Minneapolis, Minn.

Before VAN OOSTERHOUT and BLACKMUN, Circuit Judges, and HANSON, District Judge.

**VAN OOSTERHOUT, Circuit Judge.**

This case is before this court upon petition of the National Labor Relations Board pursuant to 29 U.S.C.A. § 160(e) for enforcement of its order issued July 13, 1961, against respondent Upholsterers Frame & Bedding Workers Twin City Local 61 (hereinafter called Local 61). The Board's decision and order are reported at 132 NLRB 40.

The primary question here presented relates to the interpretation of § 8(b) (4) (ii) of the National Labor Relations Act as amended by the Landrum-Griffin Act of 1959 (29 U.S.C.A. § 158(b) (4) (ii)). More precisely, the issue is whether the statute proscribes peaceful picketing at the site of a neutral employer which is aimed primarily at consumers and which does not induce any refusal to work upon the part of the employees of the neutral employer or interfere with any pick up or delivery service.

Brief summary of the facts will suffice. Officers of Local 61, believing that retail stores were handling too large an amount of upholstered furniture and mattresses made outside the trade area and thus not buying enough of this type of merchandise from local manufacturers to permit them to maintain a satisfactory employment level, launched a campaign to encourage the sale of more locally manufactured products. Appeals to executives of retail stores did not produce a result satisfactory to Local 61. A newspaper article was published captioned, "Pickets to protest Sales of Furniture from Afar." On November 30, 1959, the Union stationed two men at the MHF Store. One man handed out leaflets to those entering and leaving the store and passersby. The leaflets encouraged the purchase of home manufactured products and set out the names of local manufacturers. The other man patrolled the customer entrances to the store carrying two placards, one of which read:

> "Help us
> Keep Our Jobs
> Buy Mattresses
> Made Locally by
> Upholsterers Local 61, AFL-CIO."

The other placard read:

> "Patronize
> Home Industry
> Buy Union
> Made
> Upholstered Furniture
> made by
> Upholsterers Local 61, AFL-CIO."

On December 1, Local 61 put two men at Donaldson's store who carried out activities similar to those performed at MHF.

There was no violence, force or breach of peace. The persons carrying the placards and distributing the leaflets did not picket the employee or delivery entrances and the pickets did not operate at times the employees usually reported for or left work. No employees of the secondary employer refused to work nor was there any interference with the pick up and delivery service of the secondary employer. The handbills and placards urged the purchase of locally manufactured products and did not contain an

appeal to any person not to buy any product or not to patronize any store.

The Board found that Local 61's consumer picketing of the two retail stores involved coercion and restraint in violation of § 8(b) (4) (ii) (B) of the Act and entered an order requiring Local 61 to cease and desist from such picketing and to post appropriate notices. The Board here seeks enforcement of such order.

There seems to be little dispute with reference to the basic facts. There is no sound factual basis for distinguishing the legitimate publicity features or the object of the handbills from that of the placards carried by the pickets. The Trial Examiner and the Board found that Local 61 did not violate § 8(b) (4) (i) since no inducement of the employees of the picketed stores to engage in work stoppages was either intended or likely to result from the consumer picketing. The Trial Examiner and the Board also agreed that Local 61's distribution of the leaflets did not violate § 8(b) (4) (ii) because it constituted publicity protected by that section. The Board likewise found contrary to the Trial Examiner that the newspaper story publicizing the consumer picketing did not threaten or coerce or restrain within the meaning of the Act. None of such findings are at issue here.

It seems clear that the Board's determination that the picketing here is illegal is based upon its interpretation of the Act. The Board bases its interpretation upon its prior decisions holding that it rejects the contention that the picketing was privileged because it was intended for the consumer public and not addressed to neutral employees, adhering to its holding that "by literal wording of the proviso [to Section 8(b) (4)] as well as through the interpretive gloss placed thereon by its drafters, consumer picketing in front of a secondary establishment is prohibited."

It is the Board's position that peaceful consumer picketing in front of a secondary establishment is *per se* illegal under the Act. Thus the problem presented is whether the Board's decision was induced by an erroneous interpretation of the statute.

The Supreme Court in National Labor Relations Board v. Fruit and Vegetable Packers and Warehousemen, Local 760, 84 S.Ct. 1063, fully considers the interpretation problem presented by § 8(b) (4) (ii) (B), resorting extensively to the legislative history of the statute. The Supreme Court thus states and answers the issue:

"We come then to the question whether the picketing in this case, confined as it was to persuading customers to cease buying the product of the primary employer, falls within the area of secondary consumer picketing which Congress did clearly indicate its intention to prohibit under § 8(b) (4) (ii). We hold that it did not fall within that area, and therefore did not 'threaten, coerce, or restrain' Safeway. While any diminution in Safeway's purchases of apples due to a drop in consumer demand might be said to be a result which causes respondents' picketing to fall literally within the statutory prohibition, 'it is a familiar rule that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit nor within the intention of the makers.' Holy Trinity Church v. United States, 143 U.S. 457, 459 [12 S.Ct. 511, 512, 36 L.Ed. 226]. See United States v. American Trucking Ass'ns, 310 U.S. 534, 543–544, [60 S.Ct. 1059, 1063–1064, 84 L.Ed. 1345]. When consumer picketing is employed only to persuade customers not to buy the struck product, the union's appeal is closely confined to the primary dispute. The site of the appeal is expanded to include the premises of the secondary employer, but if the appeal succeeds, the secondary employers' purchases from the struck firms are decreased only because the public has diminished its purchases of the struck product. On the other

hand, when consumer picketing is employed to persuade customers not to trade at all with the secondary employer, the latter stops buying the struck product, not because of a falling demand, but in response to pressure designed to inflict injury on his business generally. In such case, the union does more than merely follow the struck product; it creates a separate dispute with the secondary employer."

In the case just cited, the peaceful picketing at Safeway's stores was limited to the carrying of signs urging customers not to purchase "Washington State Apples." The Union was engaged in a primary strike with the packers of such apples. The Board held such picketing was a *per se* violation of the Act. The Court of Appeals in Fruit & Vegetable Packers & Warehousemen, Local 760, v. N. L. R. B., 113 U.S.App.D.C. 356, 308 F.2d 311, remanded, holding that the picketing was unlawful only if it established that Safeway suffered or was likely to suffer an economic loss as a result of the picketing. The Supreme Court vacated the judgment of the Court of Appeals and remanded with direction to set aside the Board's order, stating: "A violation of § 8(b) (4) (ii) (B) would not be established, merely because respondents' picketing was effective to reduce Safeway's sales of Washington State apples, even if this led or might lead Safeway to drop the item as a poor seller."

The interpretation placed on § 8(b) (4) (ii) (B) by the Supreme Court in Fruit & Vegetable Packers & Warehousemen is controlling here and compels the denial of the petition for enforcement. In fairness to the parties, it should be said that this case was briefed, argued and submitted prior to the handing down of the controlling case of the Supreme Court just cited.

The decision on the interpretation issue is dispositive of this case. We do not reach the other issues raised.

The petition for enforcement is denied.